GEORGE P. PLANT MILLING CO. ET AL., PETITIONERS AND APPELLANTS, *v.* NAVAS ET AL., RESPONDENTS.

## APPEAL from the District Court of Arecibo in a Foreclosure Proceeding.

### No. 1265.—Decided April 6, 1915.

APPEARANCE—SOLICITOR—ATTORNEY.—The solicitor referred to in subdivision 1 of article 169 of the Mortgage Law Regulations no longer exists in Porto Rico, therefore its provisions cannot be complied with strictly; and pursuant to section 51 of the Code of Civil Procedure, it is sufficient if appearance be made by an attorney legally empowered to practise his profession.

ATTORNEY—OFFICER OF COURT.—According to the statutory provisions governing the matter, an attorney duly authorized to practise his profession is considered an officer of the court.

FORECLOSURE PROCEEDING—MATURITY OF INSTALMENT—MATURITY OF DEBT—RECORD OF STIPULATION.—Article 130 of the Mortgage Law is applicable to cases in which the whole debt is understood to be due when one instalment becomes due, and such stipulation should be made expressly and recorded in the registry; but it does not bar the collection of the instalment due by summary proceedings immediately after its maturity, as provided for in article 168 of the Mortgage Law Regulations.

ID.—UNQUESTIONABLENESS OF DEBT.—In order that execution may issue in accordance with the letter and spirit of the Mortgage Law, the unquestionableness of the debt must be shown in an authentic and specific manner.

MORTGAGE—DEBT—LOAN—FUTURE OBLIGATION.—Although mortgages are usually created to secure the payment of previously existing debts or loans of money, this does not imply that they cannot be created to secure debts due at a future date.

The facts are stated in the opinion.

*Mr. Antonio Sarmiento* for the petitioners.

The respondents did not appear.

MR. JUSTICE DEL TORO delivered the opinion of the court.

This is an appeal from a decision of the District Court of Arecibo refusing to issue a demand summons against the debtor in certain foreclosure proceedings.

On October 29, 1914, the George P. Plant Milling Company of St. Louis, Missouri, the Texas Star Flour Mills of Galveston, Texas, and the Wichita Mill Elevator Company of Wichita Falls, Texas, through their attorney, Antonio Sarmiento, filed a petition, accompanied by various documents, in the District Court of Arecibo instituting summary foreclosure proceedings against Manuel G. Navas and Hortensia Balseiro Marín.

Summarized, the petition alleged the following facts:

1. That prior to July 10, 1913, Manuel G. Navas, the husband of Hortensia Balseiro Marín, owed the petitioners the following amounts: The George P. Plant Milling Company, $2,000; the Texas Star Flour Mills, $1,500, and the Wichita Mill Elevator Company, $1,427; a total of $4,927.

2. That Navas covenanted to pay said debts to each of his creditors in four annual instalments, beginning June 19, 1913, with interest thereon at 6 per cent per annum payable together with the instalments.

3. That Navas also entered into an agreement with the petitioning firms by which they were to ship him 100 sacks of flour monthly, attaching 30-day drafts on Navas to the bills of lading.

4. That for the purpose of securing the payment of the debt, the drafts, the interest, expenses, costs and attorney's fees, Hortensia Balseiro Marín created a mortgage in favor

of the three petitioning firms, without preference among them, on a rural property which is duly described.

5. That the mortgage was created by a public instrument which was recorded in the registry.

6. That Navas failed to pay the instalments of the debts which fell due on June 19, 1914, as follows: The George P. Plant Milling Company, $500; the Texas Star Flour Mills, $375; the Wichita Mill Elevator Company, $356.75; a total of $1,231.75, with interest at 6 per cent on the total indebtedness of $4,917 from June 19, 1913, to June 19, 1914. He also failed to pay the following drafts drawn against shipments of flour: The George P. Plant Milling Company, including expenses of protest, $482.90; the Texas Star Flour Mills Company, including expenses of protest, $481; the Wichita Mill Elevator Company, $470; making a total of $1,333.90.

7. That the mortgage in question is still in force and the mortgaged property has not been conveyed to a third person.

The eighth clause specifies the amount due to each one of the petitioners and the ninth clause fixes the fees of their attorney at $300.

Finally, the petitioners set up the legal grounds on which they are advised that the court should order the collection of the debts by foreclosure. The petition concludes with the prayer that Manuel G. Navas and his wife, Hortensia Balseiro Marín, be summoned in order that they may pay the amount claimed by each of the petitioners within a period of thirty days, warning them that if they should fail to do so the mortgaged property would be sold at public auction.

The following documents accompanied the petition:

A. The mortgage deed. Clauses VI, VIII and IX of the said deed, to which Hortensia Balseiro de Navas, among others, was a party, read as follows:

"VI. That Manuel G. Navas has made an agreement with his creditors, and now ratifies the same, to pay his debts in the follow-

ing manner: One-fourth of his indebtedness to each of his three creditors at the end of each year and in a period of four years, beginning June 19, 1913, with interest at 6 per cent per annum, payable with the instalments, the debtor being at liberty to pay the whole indebtedness at any time prior to the maturity of said instalments.

"VIII. That regarding the second part of the agreement—that is, the security for the monthly shipments of flour by each mill to the amount of 100 sacks, in so far as it may not be paid for by the drafts—said Manuel G. Navas offered to his creditors, the shippers of the flour, a mortgage security on a segregated piece of land in the sum of $1,500 during the period of four years agreed upon.

"IX. That Hortensia Balseiro Marín, assuming absolutely the obligations of her husband in the manner set out, freely and spontaneously mortgages the segregated twenty-five *cuerdas* of land, as far as her ownership or interest therein may extend, to secure the payment of the $4,927 owing by Navas and the $1,500 specified and stipulated to respond for the unsecured shipments of 100 sacks of flour by each of the creditor firms, all in favor of the three, without preference among them, the property also being liable for the payment of $300 as interest and $700 for disbursements, costs and attorney's fees, the said lien to remain on the property until canceled in the registry of property."

B. Protest made before a notary for the non-payment of a draft for $475 drawn by the George P. Plant Milling Company on Manuel G. Navas, accepted by him on January 2, 1914, and unpaid at maturity although demand for payment had been duly made.

C. Protest made before a notary for the non-payment of a draft for $475 drawn by the Texas Star Flour Mills on Manuel G. Navas, accepted by him on January 9, 1914, and unpaid at maturity although demand for payment had been duly made. ·

D. An account from which it appears that Manuel G. Navas owed the Wichita Mill Elevator Company $1,427 on June 19, 1913, plus $470 on November 8, 1913, making a total of $1,899. The account was verified before a notary public of the county of Wichita, Texas.

E. An application by Attorney Sarmiento to the regis-

trar of property for a certain certificate which was subjoined by the said official on October 14, 1914, and shows that the said mortgage is recorded in the registry in the form literally transcribed; that there was no other lien on said property prior or subsequent to the mortgage; that the property has not been conveyed to a third party, and that the mortgage has not been canceled in whole or in part.

After considering the petition and the accompanying documents, the District Court of Arecibo, on November 12, 1914, dismissed the petition on the following grounds:

"The petition alleges no facts which show that the mortgage debt was demandable as required by subdivision 3 of article 169 of the Mortgage Law Regulations, for it is not allegad that the said obligation was due or that there was any stipulation that said obligation should be deemed due upon the failure to pay any instalment.

"It is not alleged in clauses 2, 3 and 4 of the petition that the time agreed upon for the payment of the amounts secured by the mortgage was four years, beginning July 19, 1913.

"According to section 1092 of the Civil Code, 'Obligations, the fulfilment of which has been fixed for a day certain, shall only be demandable when the proper day arrives.'

"Under the provisions of article 30 of the Mortgage Law, summary foreclosure proceedings may be prosecuted when payment is to be made in instalments and a part of the principal or interest is not paid by the debtor at maturity, provided such stipulation shall be of record in the registry.

"Therefore, there being in the present case no stipulation that if an instalment be not paid at maturity the creditor may institute summary foreclosure proceedings to recover it, either of record in the registry or included in the mortgage deed, it is manifest that summary foreclosure proceedings cannot be prosecuted for the recovery of one instalment until the whole debt becomes due.

"Moreover, in this case the petition is not accompanied by evidence of the legal capacity of the creditors to sue, which is a material and indispensable requisite according to subdivision 1 of article 169 of the Mortgage Law Regulations.

"And, finally, in the accompanying document whose apparent object is to show the protest by the Wichita Mill Elevator Company of the draft due and the amount of the first instalment of princi-

pal and interest due, the amount stated is $1,897, while the sum stated in the petition is $912.37.''

On December 12, 1914, the petitioners filed their notice of appeal in case their motion for reconsideration should be overruled, which motion was overruled, in fact, by the district court on the same grounds on which it based its decision of November 12, and on the further ground that ''inasmuch as the sixth clause of the mortgage deed contains the condition that the plaintiffs should ship 100 bags of flour to the defendant monthly, the contract is a bilateral one in this particular and requires previous proof of its fulfilment on the part of the plaintiffs.''

The appeal was duly prosecuted before this court, a hearing was had on March 11, 1915, and the case was submitted for our consideration and decision.

The first question to be considered is that referring to the proof of the legal capacity of the petitioning firms. In our opinion the defect mentioned by the trial judge does not exist.

Subdivision 1 of article 169 of the Mortgage Law Regulations, cited by the judge of the district court, provides that the following shall be presented with the initial petition in the proceedings:

''*First.* Evidence of legal capacity to sue, including the power of attorney of the solicitor, if the creditor or his legal representative does not appear in person.''

There are now no solicitors in Porto Rico and section 51 of the Code of Civil Procedure provides that ''Appearance in court shall be made through an attorney legally empowered to exercise his profession.''

This is what was done in the present case. The petitioning firms appeared directly through their attorney, Antonio Sarmiento, who is duly authorized to practise his profession in Porto Rico and is considered an officer of the court according to the statutory provisions governing the matter,

and presented with their petition all the documents required by article 128 of the Mortgage Law, among which is the mortgage deed, a public document in which the legal capacity of the creditors was recognized by the debtor and by the owner of the property which was mortgaged to secure the debts.

Let us now see whether the petition and the documents accompanying the same show that the debts were recoverable, and whether in such case the summary proceedings prescribed by the Mortgage Law may be prosecuted for that purpose.

When the mortgage deed was executed respondent Navas confessed that he owed $4,927 to the petitioners and promised to pay the same in four annual instalments, beginning June 19, 1913. June 19, 1914, arrived and the debtor failed to pay the instalment, whereupon, on October 29, 1914, the creditors instituted these proceedings to collect it. In our opinion the conditions of the contract are so clear on this point that the right to recover the amount of the first instalment of the debt at the time the petition was filed is manifest.

It was also agreed in the mortgage deed that the petitioning firms should ship a specified number of sacks of flour to respondent Navas monthly and that they should collect for the same by drawing on Navas at thirty days' sight. It is alleged that a certain quantity of flour was shipped to Navas and that Navas accepted the drafts but did not take them up within the time fixed. The petition was filed after the debts became due. The acceptance of the drafts and the failure to pay the same at maturity appear in the notarial acts of protest signed by debtor Navas himself. This being the case, the right to demand fulfilment of the obligation which debtor Navas was under to pay the amount of the drafts appears to us to be quite clear also.

By the said deed Hortensia Balseiro y Marín, wife of debtor Navas, guaranteed the fulfilment of the obligations

contracted by her husband with the petitioning firms by creating a mortgage on a property belonging to her on the terms and under the conditions hereinbefore stated. It will be seen from an examination of these terms and conditions that the mortgage, as is natural, bears strict relation to the obligations secured by it in the manner in which said obligations were contracted, and that if the purposes of the mortgage are to be carried out it is necessary that it be actionable in case of default in the payment of the first or of any of the succeeding instalments of the debt, or in case of failure to pay any of the drafts drawn against the shipments of flour within the time agreed upon and fixed by the contracting parties themselves.

Article 130 of the Mortgage Law, cited by the judge of the district court in support of his conclusion that in this case the mortgage cannot be foreclosed until the maturity of the whole debt, reads as follows:

"The provisions of the two preceding articles shall likewise apply to a case in which a part of the principal or interest, when payment is to be made in instalments, shall not be paid by the debtor at maturity, provided such stipulation shall be of record in the registry."

In our opinion the above article, which refers to articles 128 and 129 of the Mortgage Law providing for special summary proceedings for the collection of mortgage debts, has not been construed properly by the district court. Our opinion is that said article 130 is applicable to cases in which the whole debt should be understood to be due when one instalment becomes due, and in order that this may be so it is evident that it should be stipulated expressly and the stipulation recorded in the registry, as required by the law. But the provisions of the said article do not bar the collection of the instalment due by summary proceedings immediately after its maturity, as provided for in article 168 of the Mortgage Law Regulations, which reads as follows:

"If a mortgage debt, or the interest thereon, shall have matured in whole or in part, the proceedings for the recovery thereof, in so far

as they are directed solely against the property subject to the mortgage, shall conform to the provisions of articles 128 *et seq.* of the law and of these regulations, supplemented in the form indicated therein by the Law of Civil Procedure in force in Cuba and Porto Rico, or the Philippines, respectively.''

As regards the drafts, the case is still clearer for the obligations which they represent were wholly due on account of the expiration of the time in which they should have been paid.

The last ground on which the decision appealed from is based seems to us to be well founded. In order that execution may issue in accordance with the letter and spirit of the Mortgage Law, the unquestionableness of the debt must be shown in an authentic and specific manner. In the present case the part of the debt amounting to $4,927, secured by mortgage and payable on June 19, 1913, was specified in a public document recorded in the registry and, according to a certificate of the registrar issued fifteen days before the filing of the initial petition in the proceedings, the record was in force and effect. The debts proceeding from the drafts drawn by petitioners the George P. Plant Milling Company and the Texas Star Flour Mills, were set out in the public document and also shown by the drafts themselves accepted by respondent Navas and duly protested before a notary public. But the debt proceeding from the draft drawn by the other petitioner, the Wichita Mill Elevator Company, is not specified in the authentic manner required by the law. The account rendered is confused and calls for explanations, and although sworn to, it does not appear to have been accepted by respondent Navas.

Having considered all the grounds of the decision appealed from, let us examine the additional reason given by the judge of the district court for refusing to reconsider his decision of December 12, 1914. It is true that the nature of the agreement relative to the shipping of flour by the petitioners and the payment thereof by respondent Navas gives

rise to some confusion. Mortgages are usually created to secure the payment of previously existing debts or loans of money, but this does not imply that they cannot be created to secure such contracts as the one we are considering. The fact is that the mortgage was created according to the intention of the parties and we see no reason why execution should not issue if the right to demand payment of the debt is shown in the clear and authentic manner as it is in the case of the drafts drawn by petitioners the George P. Plant Milling Company and the Texas Star Flour Mills,—that is, by drafts accepted by the respondent and duly protested. The Mortgage Law itself contains provisions governing mortgages created to secure future obligations. See articles 142 and 143 of the Mortgage Law and 3 Galindo's Commentaries (Fourth Ed.), 353 *et seq.*

In view of all the foregoing we are of the opinion that the decision appealed from should be reversed and the judge of the District Court of Arecibo directed to issue the summons petitioned for, except as to the item of $470 claimed by petitioner the Wichita Mill Elevator Company on account of drafts drawn against shipments of flour.

> *Judgment reversed and the lower court ordered to issue the summons petitioned for.*

Chief Justice Hernández and Justices Wolf, Aldrey and Hutchison concurred.